Good morning, your honors. My name is Bruce Wong, and I'm privileged today to represent Maria Cortez Canales, who is in court with us today, with one of our United States citizen children. We are here today because although the immigration judge found my client warranted relief under cancellation of removal for non-permanent residents, the board found her ineligible because 20 years after first coming to this country, she worked to supplement her welfare income, and in doing so, she committed welfare fraud. The board ignored the plain language of the statute, which requires a CIMT conviction that Ms. Cortez has to be committed within five years of a lawful admission. The board found that this time limit was irrelevant, such that the deportability ground barred her. This is a misreading of the statute's plain language. So the question before us today is, what did Congress mean when it barred relief to people convicted of the offense under 8 U.S.C. 1182-A2 or 8 U.S.C. 1227-A2? That's the grounds of inadmissibility or deportability. The board has repeatedly and correctly held that the reference to the grounds of inadmissibility plainly includes the exception to the grounds under 1182-A2 that makes someone inadmissible if their moral turpitude offense fits within the petty offense exception, and this is the case here today. One of the problems of that exception relates to the timing of the offense relative to the date that the noncitizen is seeking admission. But in my case, the board found that the plain language under the grounds of deportability regarding the timing of the offense relative to the admission was not incorporated to the relief bar. There's no principal reason for the divergent readings of the statute, and the Supreme Court recently stated in Duda-Lang, limits on relief eligibility have to be rational and related to the reasons for relief. The agency's reading of the statute of deportability means that to grant non-lawful permanent benefit of the petty offense exception to admissibility, but in the same breath, it merely on the fact that the offense carries a potential sentence of one year, it could not actually have been imposed, bars my client. It just does not make sense. It reads words right out of the statute in one case, but not in the other. And Gonzalez, Gonzalez, it should not be controlling in this case. Gonzalez, Gonzalez was nearly tailored to a crime involving domestic violence, and it should not be extended. Gonzalez, Gonzalez considered what to make of the reference to a deportability ground, the domestic violence one, which has no counterpart in the grounds of inadmissibility. My client was convicted of a CIMT. The CIMT falls within the grounds of inadmissibility and deportability. There are certain grounds of inadmissibility, and there are certain grounds of offenses that fall within the deportability grounds. For the inadmissibility, there's the CIMTs, there's the drug offenses. For the grounds of deportability, you have also the counterpart of CIMTs, you have your drug offenses, but you also have aggravated felonies, you also have firearms offenses, and you also have the domestic violence. So clearly, Cortez is distinguishable because her conviction involved a CIMT, which is a ground of deportability and inadmissibility. And I'm urging that when Congress had a rule for each situation, it wanted you to apply the relevant rule. And that is Gonzalez, Gonzalez involved the domestic violence conviction, which is only listed as a grounds of removability. And the panel, although it cannot overturn Gonzalez, Gonzalez, it should not be controlling if there are intervening Albunk cases, Supreme Court cases, or if there's any statute amendments. And under Giudelain, Giudelain speaks to the fact that the comparable rounds test for the eligibility for 212C relief to be arbitrary and capricious. Before Giudelain was decided, the board permitted lawful permanent residents to apply for 212C relief, only if the DHS charges them with the grounds of deportability that had comparable grounds and inadmissibility. Also, Giudelain held that the relief eligibility may vary depending on the admission status, but to do so, it had to do it in a rational way, noting that the standard would apply to statutory interpretation. Now, the plain terms of 8 U.S.C. 1229B, convicted of offense under, is unambiguous, and the government has argued that it is. So under the terms, it should be the plain language interpretation. And we submit and argue that the offense under should mean by reason of authority of or subject to. And the district court has defined under. To follow the definition under Gonzales-Gonzales that the meaning described that the meaning convicted under should be described under adds another word to the statute. And it's not the plain language interpretation of the statute by adding another word to the statute. Well, let me ask you this. Is this basically your argument that the petty offense exception should apply here for these reasons? That 1182 applies to inadmissible aliens like Cortez Cornelis, and 1127 applies only to deportable aliens? And Cortez Cornelis was not admitted and is, therefore, not a deportable alien. And the 1127 crimes involving moral turpitude apply only if committed within five years of the admission to U.S. that Cortez Cornelis was never admitted. So that doesn't apply to her. And if we follow Gonzales-Gonzales and cross-reference 1182 and 1227, the petty offense exception should apply under 1182 and 1227. Yes, Your Honor. I mean, it just seems like that. Is that what you're saying? Yes, Your Honor. Okay. All right. So why don't you save some time, then? Well, I was trying to get my point across right there. The board can't just pick and choose which language to use. You know, if the admission is in the statute and after there's a time limit, it can't just ignore that And on the other side, on the inadmissibility grounds, look at the time limitation, because there's a time limitation in the petty offense as well. The first part of the petty offense exception has the grounds, after five years or so here, the crime was committed when the alien was 18 years of age, and when the crime was committed more than five years before after the date of application. You also have a time limitation on the grounds of inadmissibility, and it should apply equally to the grounds of removability. Okay. And under Gonzales-Gonzales, Your Honor, Congress has at times placed greater burdens on those granted the privilege of admission, like LPRs. And under the INA-212H, it has been upheld, which provides relief from deportation to undocumented individuals. I think we have your argument well in hand. Okay? Okay. Thanks. If there's any ambiguity, Your Honor, this should be ruled in favor of the alien. Okay. Great. We'll hear from the government. Thank you. May it please the Court, Carol Federighi, on behalf of the respondent, the Attorney General, in this matter. The question in this case is whether Ms. Cortez's welfare fraud conviction is an offense described under 81227A2. And this encompasses two questions. One, does the petty offense exception in 1182A apply to her 1227A2 offense? And then, does the five-year limit in 1227A2 apply? 1227A2 covers crimes involving moral turpitude with a possible sentence of one year or longer that were committed with five years after admission. There is a petty offense exception. Okay. Does she fall within that? Well, she was never admitted to the U.S., so the time limit wouldn't apply to her at all, in fact, because she was never admitted. So is she under 1227A2? That is the question, whether the five-year limit applies in her case. And we argue the Board said it did not apply because only the provisions of 1227A2 relating to the offense and the elements of the offense would apply to determine whether her CIMT barred her from cancellation of removal. It said that the five-year limit, because that was an immigration-related limit tacked on to the offense, that that would not apply to determine whether her CIMT barred her cancellation of removal application. So there's no limit, then, for her.  At any time. Right. There would be no limit for any aliens convicted of CIMT. What the Board's reading essentially does is say that regardless of when the offense was committed, it would bar them from cancellation of removal. And it makes it equal between people who were legal entrants originally who would have a five-year period and people like Ms. Cortez who were not admitted, so there would never be a five-year period. It puts them on an equal footing. So all aliens, regardless of whether they entered legally or illegally, any CIMT that has a possible sentence of one year or longer would bar them from cancellation of removal. The Board based its interpretation on this Court's precedent of Gonzales-Gonzales and its reading of the plain language of the statute. Gonzales, but wasn't there a specific provision dealing with domestic violence in Gonzales? Gonzales-Gonzales, it did not involve the exact situation at issue here, but it did basically say that it was that the cancellation of removal provision had to be interpreted as referring to a list of criminal offenses. So it took an offense-based... A quite specific criminal offense was listed as disqualifying. Yeah, and I think Gonzales-Gonzales, it was domestic violence, which is a separate provision from the CIMT, and it's not duplicated in 1182. Does that suggest that in terms of a petty offense exception, it may not apply to domestic violence, but how do you get it to necessarily not apply to welfare fraud? That was the holding. Vasquez-Hernandez basically made the holding that the petty offense exception wouldn't apply to a domestic violence conviction. And that reasoning, though they didn't address a CIMT in that case, the reasoning, the same logical reasoning that applied there would extend to say that it doesn't apply in the CIMT context as well. There would be no rational basis to distinguish the CIMT, which is covered by 1227A2, from a domestic violence conviction also covered by 1227A2. It was, again, based on the plain language of the statute. The Gonzales-Gonzales is focused on the offense nature, the nature of the offense and not the criminal consequence, I mean the immigration consequences. And as well the fact that the language was not, the statute does not contain language saying the alien must have been found deportable under 1227A2 as it does in other aspects, other parts of that statute, particularly the stop time provision. So it took out the immigration consequences of the offense by not using that particular language, which appears in other parts of the Immigration Act. And the recent case of Reyes that counsel referred to in the previous case talked about a NACAR regulation which used that deportable under language and used that to distinguish its case and its holding from the Cortez case and said Cortez, which said that the 5-year limit doesn't apply is different because the 1227 or the cancellation of removal provision doesn't say someone has to be deportable under 1227A2 to be barred, whereas the NACAR regulation at issue in Reyes did use that language. So that's how they used it. Excuse me? I'm trying to follow the logic. We're going all over the map with these. Okay. So if we're not – she doesn't win under 1227 because she doesn't have the 5-year limit. Right. Okay. So then the petty offense exception. Yes. And there's a petty offense exception under 1182A2, right? Correct. And the question is, does the petty offense exception apply similarly under 1227? Correct. Okay. The answer is no. The answer is no. And the reasoning this Court used in Vasquez-Hernandez, I believe, extends from domestic violence convictions, which was the specific conviction at issue there, to crimes involving moral turpitude. There's no basis to distinguish the reasoning in that case just by the fact that a CIMT is also governed by 1182. And I can point – let me point to specific language in that decision, if I can find it quick. The Court said that consequently – In what case it said? This is Vasquez-Hernandez, 590F3, 1053. It was cited in a 28J letter we filed back in September of 2012. And the Court said, A conviction for an offense described in 1227A2 that may meet the requirements of the petty offense exception in 1182A2 is still a bar to cancellation of removal. Now, admittedly, the Court was addressing a domestic violence conviction and had said earlier in a footnote it was not addressing a case where the eligibility offense is also covered by 1182A2. Like, I think they were referring to a CIMT in that. But the language there is expressed without qualification. Based on the reasoning of Gonzales-Gonzales, which talked about offenses, lists of offenses, and said also that you had to separately satisfy each section, 1182A2 was a separate entity from 1227A2. And then later on in the Vasquez-Hernandez decision, the Court said – and I have been struggling with this sentence, but I think it says what supports our position. The domestic violence conviction in Vasquez-Hernandez can also be a CIMT, and the Court says at the end it's irrelevant for cancellation for removal purposes that that offense meets the criteria in both 1182A2 and 1227A2. So the Court even addressed in that case the fact that domestic violence could be a CIMT, and why wouldn't it be subject to the petty offense exception then, and basically said it still has to meet the separate criteria of 1227A2, which doesn't contain a petty offense exception. This rule, or seemingly contradictory result, applies only to offenses which have a maximum punishment of one year. Those are the ones that are covered by both 1182A2 and 1227A2. So it's not – it's going to be a subset of all offenses that are covered by both and where you would think – where one might have a petty offense exception, but it wouldn't under 1227A2. It's just a limited set of offenses that have a maximum penalty of one year, because if the max is below one year, then they wouldn't be covered by 1227A2. Now, you invoked Chevron in this analysis? To the extent there's any ambiguity, yes, Chevron would be due because we have a published board decision here. The Court has based its analysis of these provisions so far on plain language interpretations. And both Gonzalez-Gonzalez and Vasquez-Hernandez were based on a plain language interpretation. So, and we would agree. We think the plain language does support the Court's decisions in those cases and their extension to the present case and to the conclusion that the petty offense exception doesn't apply to a CIMT that is also covered by 1227A2 and a five-year time limit does not apply to those as well. Well, if we buy that, we wouldn't get to Chevron analysis. Correct, correct. If we did, what would be the? Let me – I'm not sure if the – did the Board ever – well, I can't ask you a question. Yeah, the Board did go on to find out that even if the language is ambiguous, it would interpret it in that manner. So it did move on. The Board itself moved on to Chevron 2, and this is on page 308 of the Court's decision. So its interpretation would be entitled to Chevron deference if the Court agreed that there was any ambiguity in the provisions. Well, you know, we've had this long discussion, but this offense was committed when she was under the age of 18, and she was released five years before she was released before she filed her application. And her statute of conviction had a maximum penalty of one year, and she was sentenced for less than six months. I mean, just looking at that, I'm not – I'm not sure that the petty offense exception doesn't apply. Well, the first part that you cite, that it was convicted when she – that she was convicted when she was under 18, she actually was convicted when she was 42 years old. So that would – that part doesn't apply. Yes, the petty – That doesn't apply. Okay. But let's go to 2. The 2, yes. Because her statute of conviction had a maximum penalty of one year, and she was sentenced for less than six months. That would – that does apply to the extent that – so it doesn't mean that she's barred under 1182A2 from cancellation. But she is barred under 1227A2. Nothing – the cancellation statute makes it clear that all three provisions that it cites apply equally, and there's no interrelation between the three. And that was the holding of Gonzalez-Gonzalez. So you're saying that 1227A2 overrides 1182A2. I – they're parallel provisions. So even though she doesn't – she's accepted from 1182A2, she's not accepted from 1227A2. It's not a question of one overriding the other. She has to independently satisfy all three. How do you distinguish the Garcia-Hernandez case? Garcia-Hernandez was decided before Gonzalez-Gonzalez made it clear that an alien must satisfy both 1182 and 1227, even if they're an inadmissible alien. Before that, I'm not sure the – Did it hold that 1229 did incorporate the petty offense exception? No. It held that – what did it hold? Excuse me. I'm blanking out. It was decided before – I just need to look at my notes here. I get that point. Yeah. It said the petty offense exception applies to CIMT that's covered by 1182. So then you get to Gonzalez, and Gonzalez, though, involves a quite specific provision dealing with domestic violence. Wouldn't it be easier to say that the general rule was created in Garcia-Hernandez and that the exception for domestic violence was all that Gonzalez dealt with? I don't think that we can view Gonzalez-Gonzalez as creating an exception. It's more of a development of the case law because it took – Gonzalez-Gonzalez established the proposition that even an inadmissible alien had to satisfy 1227A2. So until that point, there was no – I'm not sure how much the board was applying 1227A2 to inadmissible aliens. But after that, the board continued to develop the case law and determined that the petty offense exception wouldn't carry through to 1227A2. And based on language in Gonzalez-Gonzalez that's more generally phrased than just creating a narrow exception, they basically said it's offense language in the cancellation of removal statute. It talks about offense, and they put in the word described, described under those statutes and not – and so it had to – an alien has to meet all three statutes. Is your argument consistent with Vasquez-Hernandez? Yes, it is. And we – as I said, Vasquez-Hernandez didn't – purported not to address the specific situation of CIMTs. But if you read through the reasoning and the language is phrased broadly, it seems to imply that the exception also would not apply to CIMTs as well as the domestic violence conviction at issue there. And, in fact, at the end it pointed out that a domestic violence conviction can also be a CIMT, and that the result would be the same even if you looked at it under that rubric. So in sum, the board's decision that neither the 5-year limit nor the petty offense exception apply to 1227A2 is consistent with this Court's precedence in Gonzalez-Gonzalez and Vasquez-Hernandez and is based on the plain language of the statute and should be upheld. Thank you. Thank you. The petitioner's position is still, Your Honors. Gonzalez-Gonzalez involves a domestic violence conviction, which is only listed on the grounds of deportability under 227A2. In the Second Circuit case which came out in Reyes, it has criticized Cortez's decision, the agency's decision, in finding that the applicant's status is irrelevant to the alien's eligibility for special rule cancellation or removal. In Cortez-Cortez, the fact that the continuous physical presence language explicitly states, renders the alien inadmissible to the United States under the grounds of inadmissibility or removable from the United States under the grounds of deportability. This indicated Congress's attempt to disqualify an unalien unadmitted alien under the grounds of 212A2, 237A2, 237A3. However, the Court in Reyes clearly said this distinguished continuous physical presence does not support their decision because it rather confirms that the applicant's status is relevant to the alien's eligibility for special rule cancellation or removal. And while Congress has amended the petty offense exception periodically, its unaltered policy still is to ensure that noncitizens convicted of only one minor crime of moral turpitude remain eligible for relief for removal. Over half a century, Congress has carried this petty offense exception, and the remedial purpose is to avoid unfairness that would result if the immigration laws were strictly applied to aliens with only one single minor conviction of moral turpitude on their records. It is extremely unlikely Congress hadn't determined to create a petty offense exception to the grounds of inadmissibility based on an alien's commission of a crime involving moral turpitude, a significant policy decision which would have intended to divest the alien of the benefit of that exception if he or she were found to have committed any other offense, including a mere infraction. And I want to thank the Court for the time. And the Petitioner requests that you find her eligible for relief, and she remanded the case so she can go forward with her cancellation and removal of relief, Your Honors. Thank you very much. Thank you. Thank you. All right. This matter is submitted as well.
judges: Gwin, Pregerson, Fisher